**ROGER BENNET ADLER, P.C.**
**COUNSELOR AT LAW**

233 BROADWAY-STE 2340　　　　　　　TEL. (212) 406-0181
NEW YORK, N.Y. 10279　　　　　　　　FAX (212) 233-3801

June 15, 2023

*Via ECF*
Hon. William F. Kuntz II
Judge, United States District Court
c/o United States Courthouse, Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201-1818

　　　　Re: **United States v. Agoro, et. al. (Reply Submission)**
　　　　　　**(20-cr-00293)(S-1)(WFK)**

Dear Judge Kuntz:

　　Please treat this letter as Defendants' reply, and a companion to the memorandum of law prepared by Raymond Aab, Esq. in response to the Government's March 10th, 2023 eleven page unsworn response to the Defendants' motion pursuant to Rule 33 of the Federal Rules of Criminal Procedure to vacate and set aside the jury's verdict.

　　We discuss the issues *seriatim*:

　　A. The Sufficiency of the Government's Trial Evidence

　　In our initial submission, we contended that the Government evidence failed to credibly establish that, on the date of the alleged November 7th, 2020 shootings, the "Folk Nation Gangster Disciples" (F.N.G.D.) was both an (a) existing, and (b) functioning "criminal enterprise, and (c) Lorenzo Bailey was a member. The Government, we submit, had the burden to credibly establish both: (1) the existence of an "enterprise," and (2) a connected pattern of institutional criminal activity (see *United States v. Turkette*, 452 U.S. 576, 583, 101 S. Ct. 2524 [1981]), (3) conduct engaged in furtherance of the "enterprise."

　　The testimonial, and evidentiary "bookends," which mark the Government's litigative odyssey to competently establish that Defendant Lorenzo Bailey was both (a) an active member of F.N.G.D. on November 7th, 2020, and (b) acted with the requisite intent to increase his alleged position in F.N.G.D., we contend, were not competently established at trial beyond a reasonable doubt (*Sullivan v. Louisiana*, 508 U.S. 275, 278 [1993]; *United States v. Kirsch*, 903 F. 3d 213, 232 [2nd Cir. 2018]).

- 1 -

The Government principally relied upon the testimony of the cooperator Christian Williams. Williams' own alleged affiliation was effectively terminated with his arrest in connection with the March shooting at the "Gold Room." The record is accordingly plainly barren of any evidence that Williams ever: (a) met, (b) communicated, (c) took orders from, (d) reported to, (e) planned crimes, or (f) shared the "spoils of his crimes" with Bailey, whom he knew as "Renzo," and not "Benzo."

Indeed, in the state of such a vacuous record, Williams viewed F.N.G.D. member Waddell as someone akin to a "big brother" (T-685), and did not identify Defendant Bailey as an F.N.G.D. official or superior. Mindful of the number of interviews and proffer sessions which preceded Williams' trial appearance, it is painfully obvious that any such perception of Bailey's leadership position was a testimonial "bridge too far," and was never discernibly made.

Even after Williams was remanded to federal custody, there is no evidence Bailey ever: (a) visited Williams, (b) had telephone conversations with Williams, (c) emailed or text messaged Williams, (d) deposited funds in Williams' pre-trial detainee commissary account, or (e) sent any packages to Williams. At the "end of the day," Williams and Bailey had no discernible nexus or relationship. The notion that there was a "Director of Security" received no discernible testimonial support from Williams. However, mindful that Defendant Destine was Ronald Britton's alleged contact, he was not called by the Government*.

Mindful that an "enterprise" must constitute something more than a "simple conspiracy" (*United States v. Henderson*, 300 Fed. Appdx. 30, opinion p. 7 [2nd Cir. 2008]), relying on the testimony of the incarcerated cooperator Christian Williams falls decidedly short. Williams, the trial testimony established conclusively, was both criminally charged, and detained for the months preceding the "Gold Room Lounge" shooting incident of November 7th, 2020. There was no proof elicited that the enterprise continued, or that there was a "pattern" of criminal acts not committed on an *ad hoc* basis, but as a pattern and "enterprise activity" on, or around, November 7th, 2020.

As *United States v. Minicone*, 960 F. 2d 1099, 1106 [2nd Cir. 1992] noted, isolated, or sporadic criminal acts do not suffice. There certainly was no proof after Christian Williams was arrested in connection with the shooting at the "Gold Room" that any predicate criminal acts were committed by (or related to) the activities of F.N.G.D. Moreover, the alleged "list of positions" sent by the F.C.I. Fort Dix incarcerated Ronald Britton was sent to Defendant Destine (a/k/a "YL"). "Cam" and YL communicated between May 30th, 2020 and February 10th, 2021. While Williams asserted that YL spread information to other F.N.G.D. members, there was significantly no evidence elicited that YL, and Lorenzo Bailey, ever communicated.

---

* When arrested, Destine was in possession of three semiautomatic weapons, and numerous firearm magazines located under his daughter's crib.

The Government, at pages 3 to 10, disputes the defense contention that, while Christian Williams opined that F.N.G.D. existed (and was functional) on November 7th, 2020, since he had been incarcerated for months his opinion was, of necessity, both testimonially unreliable, and stale. He pointed to no ongoing criminal conduct engaged in after he was "pinched" following the "Gold Room" shootings.

As to the convicted felon Ronald Britton\* (a/k/a "Cam"), the same absence of any discernible nexus is clear. Indeed, the Government never apparently interviewed Britton, or called him to testify at the trial, even though he was both physically (and testimonially) available on supervised release. The download from a contraband cell phone recovered at a B.O.P. jail which Britton presumptively shared remains a creation of Britton's fertile imagination. Of the F.N.G.D. members Britton texted, it was Hans Destine, a/k/a YL, and not Defendant Bailey.

Britton is of necessity an elusive figure concerning whom Government counsel clearly rejected calling him as a witness. Since he was not called as a Government witness, any "3500 material" which was generated decidedly rests on the "cutting room floor," and the non-disclosed files of *inter alia*: (a) Bureau of Prisons, (b) F.B.I., and (c) the U.S. Attorney, E.D.N.Y.

Finally, there was never any evidence that "Cam" (Ronald Britton) and Lorenzo Bailey ever (a) met, (b) spoke either in person (or telephonically), (c) emailed (or text messaged), or (d) corresponded. Nor was there any evidence that Bailey (a) deposited funds in Cam's commissary account, (b) sent Cam any packages, (c) visited Cam at F.C.I. Fort Dix, or (d) visited Cam following Cam's discharge from F.C.I. Fort Dix. Simply put, the Government's proof of V.I.C.A.R. liability is little short of a flawed jury verdict.

At page 5 of its response, the Government alleges that the then incarcerated Ronald Britton was the leader of F.N.G.D. However, the annexed affidavit of Ronald Britton undermines the Government's contention, and the evidentiary deficiency in the foundation upon which the Court allowed the organization chart into evidence. The assertion that Britton was a F.N.G.D. leader is further belied by the role Kwyme Waddell occupied. When Waddell was arrested on felon in possession charges (22-cr-305 [ENV]), the Government contended that Waddell was the leader (see exhibit "B").

Whatever the truth may be, the Government elicited no exchanges between either Britton or Waddell and Defendant Bailey. This paucity of proof highlights the constitutional error in allowing into evidence a download from a contraband cell phone seized at a B.O.P. facility.

---

\* In an affidavit dated April 18th, 2023, Ronald Britton disavowed authorship of the F.N.G.D. organization chart which the Government elicited (exhibit "A").

Violence was a not unsurprising tactic to (a) ward off competitors (the "Hill Crew"), (b) promote narcotics trafficking, and (c) strengthen the Burden Organization's power as a criminal enterprise. All four trial defendants were acquitted of the charged V.I.C.A.R. count.

Two co-defendants, "DMX" and "QB Burden," disputed R.I.C.O. membership in the "Burden Organization." Their actions were, however, both violent, ongoing, and sourced from membership in the Burden Organization. Lorenzo Bailey, by contrast, had physically relocated from the Flatbush section of Brooklyn to Stone Mountain, outside Atlanta, Georgia, and was neither present, nor integrally involved with those who resided hundreds of miles north in Flatbush. Indeed, Bailey was then released on bail in an unrelated robbery case, and subject to ankle monitoring. The Government, we note, never introduced evidence derived from the electronic monitoring which placed Bailey at the scene of the November 7th shooting incident.

B. Sixth Amendment Violation

We contended that admission of Ronald Britton's cell phone downloads, and the purported medical records of the November 7th, 2020 shootings, violated the Defendants' Sixth Amendment right of confrontation (see Roger Bennet Adler, Esq. Affirmation dated January 6, 2023 at pages 9 to 14).

The Defendants possessed a clear Sixth Amendment right to confront the Government's witnesses and testimonial evidence (*Crawford v. Washington*, 541 U.S. 36, 124 S. Ct. 1354 [2004]; *Bullcoming v. New Mexico*, 564 U.S. 647, 131 S. Ct. 2705 [2011]; *Garlick v. Lee*, 1 F. 4th 122 [2nd Cir. 2021]). Contrary to this Constitutional protection, the Government was nonetheless permitted to use the content of the Britton contraband cell phone to undertake to establish: (a) the existence of an "enterprise," and (b) Lorenzo Bailey's alleged position therein, even in the absence of Britton's testimonial unavailability.

Britton's "organization chart" constituted a private and individual testimonial creation which, since Britton was never produced (or testified), remains opaque at best. That Britton may have concocted it while serving his sentence at F.C.I. Ft. Dix was devoid of any evidence that Lorenzo Bailey was ever offered (or ever accepted) that position and unspecified job responsibilities. Indeed, no communication between Britton and Bailey was, we note, ever marked for identification, or introduced into evidence.

The Sixth Amendment right of confrontation has been recognized since at least *Pointer v. Texas*, 380 U.S. 400, 405 [1965]. The "truthfulness function" of the confrontation clause is uniquely threatened when the alleged declarations of an accomplice witness are sought to be introduced into evidence for the truth of the contents without affording the party against whom the declaration is sought to be admitted the benefit of cross-examination (*Lee v. Illinois*, 476 U.S. 530, 541 [1986]).

Here, there was no *prima facie* evidence that Ronald Britton was both a member of the charged conspiracy, or that the declaration was both (a) in the course, and (b) in the furtherance of the conspiracy within the meaning of Federal Rule of Evidence Rule 801(d)(2)(E) (*Bourjaily v. United States*, 483 U.S. 171, 175 [1987]).

While the right of confrontation applies to (and implicates) "testimonial communications" (see *United States v. Saget*, 377 F. 3d 223, 228 [2nd Cir. 2004], we submit that both Britton's evidence, and the medical records of the shooting victims, were, in fact, testimonial in nature. None were the type of business records containing recorded routine entity transactions. Rather, and to the contrary, both were highly individualized (and fact specific) statements which offered the truth of the contents. None were subject to confrontation, or tested by the crucible of cross-examination.

Similar to an autopsy report generated by the Medical Examiner's Office (or DNA analysis), the document was generated at a time, and under circumstances when either hospital personnel, medical providers, or the victims themselves were presumptively capable of production. Only Government counsel are in a position to explain why they were not produced to lay the appropriate evidentiary foundation (see *People v. John*, 27 N.Y. 3d 294, 307 [2016]; *People v. Zephyr*, 212 A.D. 3d 738, 181 N.Y.S. 3d 343 [2nd Dept. 2023]). None were demonstrated to be testimonially unavailable.

The Government's citation to, and reliance upon *United States v. Shyne*, 617 F. 3d 103, 108 [2nd Cir. 2016], is, we respectfully submit, misplaced. In *United States v. Shyne*, supra., page 108, the Court, in a *per curiam* opnion, affirmed a conviction addressing whether the Government was required, pursuant to the Jencks Act (18 U.S.C. 3500), the proffer notes generated by Government interviews with non-testifying alleged co-conspirators. The Court noted that the production of a non-testifying declarant's statement is governed by Brady/Giglio standards, and not the Jencks Act.

Here, by contrast, the contraband cell phone was never authenticated, and was introduced for the truth of its contents, and not subject to confrontation or cross-examination. *Shyne* did not address the circumstances of a cell phone as opposed to a routine verbal exchange between alleged co-conspirators. It is specious to view the Britton evidence as non-testimonial in nature, for while its creation and authenticity were questionable in nature, it lacked any of the non-testimonial characteristics of the business records of business or enterprise.

Indeed, the U.S. Supreme Court granted certiorari and heard the appeal in *Samia v. United States*, ___ U.S. ___, 143 S. Ct. 542 [2022], involving Sixth Amendment the right of confrontation, at the U.S. Supreme Court October, 2022 term. It was orally argued on March 29th, 2023. This may add legal clarity to what many perceive to be a Second Circuit approach which fails to properly apply the protections afforded by the Sixth Amendment confrontation clause, and deprive defendants of their right to confront and cross-examine government witnesses, and "testimonial evidence."

C. <u>The Giglio Violation</u>

In paragraph 40 on page 11 of this writer's January 6th, 2023 Affirmation, the defense contended that the Government's failure to produce and provide the statements elicited during any Bureau of Prisons (B.O.P.) investigation* following the discovery of the contraband cell phone in Ronald Britton's F.C.I. Fort Dix cell violated the disclosure requirements in *Giglio v. United States*, 405 U.S. 150, 153-154, 92 S. Ct. 763 [1972]).

We contend that the evidence clearly suggests that Government "consciously avoided" learning the existence of a B.O.P. Incident Report and inmate disciplinary file and its contents, even though impeachment of a declarant is legally sanctioned. This evidence was testimonially "material" by any legal standard.

The Government's reliance upon the late Judge William Pauley's decision in *United States v. Meregildo*, 920 F. Supp. 2d 434 [S.D.N.Y. 2013 is misplaced. *Meregildo* involved the prosecution of the Bronx-based "Cortlandt Avenue Crew," and the discovery implication arising from the Government's decision to enter into a cooperation agreement with Devin Parsons, a self-professed gang member, drug dealer, and murderer. Judge Pauley's decision focused upon the request by Meregildo's counsel to compel the Government to produce Parsons' "Facebook posts" on social media, claiming that, by virtue of his status as a "cooperator," the Government became subject to "Brady" (*Brady v. Maryland*, 373 U.S. 63 [1963] obligations.

Here, the government agency which possessed potential "Giglio" [*Giglio v. United States*, supra.] material was, we note, a <u>division</u> of the "Department of Justice" (D.O.J.) prosecuting this case. The Giglio material was thus well within the grasp of the prosecution's team on request. It clearly elicited no discernible interest in doing so.

Judge Pauley simply held that imputing Brady/Giglio material to a mere "cooperator" was not legally supported, and that such a broad theory of "Brady" material imputation would potentially "paralyze" the prosecution of criminal cases. Here by contrast, the U.S. Attorney used the Bureau of Prisons to produce contraband evidence seized from Ronald Britton's Fort Dix F.C.I. jail cell. No such "paralysis" would arise from merely requiring the B.O.P. to produce the investigative files and statements elicited from Britton, as well as any other B.O.P. discipline or sanction which it may have consequently imposed.

That Judge Pauley declined to impute a cooperator's independent Facebook postings to the Southern District prosecutors does not sanction (or provide) precedential support to the E.D.N.Y. prosecution team, which appears to have "consciously avoided" acquiring the Giglio material which the B.O.P. possessed. We urge the Court to direct Government counsel to produce its communication with the B.O.P.

---

* It is unclear if the contraband cell phone was smuggled in to F.C.I. Fort Dix by a corrupt B.O.P. employee. However, the criminal prosecution of B.O.P. corrections officers for conspiracy to smuggle contraband into local jails is well known, and a matter of public record. The B.O.P. has not responded meaningfully to Freedom of Information Act attempts to learn the truth. Rather, it has "stonewalled" this writer's attempt to obtain this evidence.

related to both Ronald Britton, and securing a B.O.P. witness to provide a testimonial foundation for the introduction of the downloads of Britton's contraband cell phone.

In *United States v. Gil*, 297 F. 3d 93, 106 [2nd Cir. 2002], the Second Circuit, in an opinion by Circuit Judge Jacobs, overturned an Eastern District of New York conviction following a trial before Judge Dearie, because the E.D.N.Y. prosecution team suppressed "Brady" material involving an off-track betting (O.T.B.) memorandum between O.T.B. and contractors involving a "side agreement" to pay Gil for work performed, but compensated in a matter not aligned with the O.T.B. contract. The Court vacated Gil's conviction because the Government's failure to disclose the O.T.B. "side agreement" was error.

In *United States v. Payne*, 63 F. 3d 1200, 1208 [2nd Cir. 1995], the Court dealt with whether a publicly filed affidavit of one Wilkerson, filed in court, was suppressed. Circuit Judge Kearsey's opinion noted the voluminous discovery materials relating to Wilkerson's drug dealing, which were disclosed by the S.D.N.Y. U.S. Attorney prior to trial. That Payne's counsel failed to find a publicly filed document is distinguishable from the E.D.N.Y.'s refusal to produce B.O.P. records and/or statements following the discovery of Britton's contraband cell phone.

In *United States v. Avellino*, 136 F. 3d 249 [2nd Cir. 1998], the Court of Appeals dealt with a case in which Avellino had pleaded guilty to racketeering charges, and involved a claim that the cooperator, Alfonso Arco, had been involved in drug trafficking earlier than disclosed.

The "Brady" document in question involved an eavesdrop order notice postponement application made by a Manhattan prosecutor. The E.D.N.Y. prosecutors disavowed knowledge of the Assistant District Attorney's State Court Affirmation. Avellino contended that the E.D.N.Y. should have been charged with "constructive knowledge" of the material possessed by the New York County prosecutor. The Panel declined to do so, noting that the evidence was not "material."

In *United States v. Morrell*, 524 F. 2d 550, 555 [2nd Cir. 1975], the Second Circuit, in a post-*Giglio* opinion by Circuit Judge Moore, did not affirm the Eastern District of New York judgment of conviction, but remanded the case to the District Court to conduct an evidentiary hearing as to whether Brady material known to the Drug Enforcement Administration (D.E.A.) involving Alfredo Valdez, a Government informant and cooperator who cooperated with the Government following his December, 2019 arrest in Miami for cocaine possession. Notwithstanding that most of the benefits Valdez received were blandished in the Southern District of Florida, the Panel did not turn a "blind eye" to the Eastern District's unawareness of the Southern District of Florida based materials.

## CONCLUSION

### THE JURY'S VERDICT SHOULD BE VACATED, AND THE COUNTS OF CONVICTION DISMISSED. IN THE ALTERNATIVE, A NEW TRIAL SHOULD BE ORDERED.

Very truly yours,

Roger Bennet Adler
*Attorney for Defendant Lorenzo Bailey*

RBA/gr

Cc:

**Via ECF**
Assistant U.S. Attorney Jonathan Siegel
All Defense Counsel

**Via 1st Class Mail**
Mr. Lorenzo Bailey
#59336-509
c/o Metropolitan Detention Center
P.O. Box 329002
Brooklyn, New York 11232

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------x

UNITED STATES OF AMERICA,

                         Plaintiff,

   - v -                                    DOCK No. 20-cr-293 (WFK)

OLUWAGBENGA AGORO, et. al.,         **AFFIDAVIT**

                        Defendants.
----------------------------------------------------------x

STATE OF NEW YORK)

COUNTY OF QUEENS) SS:

    RONALD BRITTON, being duly sworn, deposes and states:

    1. I am a former prisoner under the custody of the Federal Bureau of Prisons (B.O.P.) in connection with my conviction in the United States District Court, Eastern District of New York (Vitaliano, J.). I served some fourteen years in B.O.P. custody, including most recently at Federal Correctional Institute (F.C.I.) Fort Dix,

    2. While at FCI Fort Dix, I was lodged at a 12-person dormitory unit along with 9 other inmates. While there, I was unaware of any other inmates related to Folk Nation Gangster Disciples (FNGD) and I did not communicate with anyone associated with FNGD..

    3. During a BOP search of my 12-person dormitory unit, officers discovered and vouchered a cell phone they found under a mattress of an unoccupied bed. That cell phone was not mine, nor did I ever use it to make phone calls or transmit texts.

    4. The B.O.P. never disciplined me related to the recovered cell phone.

1

A-1

5. I have recently been informed that law enforcement officers downloaded the recovered cell phone's contents and used them as evidence at a trial last Fall before Judge William F. Kuntz, II in the Brooklyn Federal Court (*United States v. Agoro*, et. al.).

6. I am also informed that the Government presented a list of FNGD members as evidence at the trial (Exhibit 19105 E), and that the Government alleged that I was the author of that list. A copy of the list is annexed hereto and made a part hereof. I did not write or assist anyone to write that list; I do not know who did write it; I never saw the list before the past two weeks.

6. The Government contended that I am currently a member and leader of FNGD. After being sentenced to prison more than 14 years ago, I was no longer a member of FNGD, nor did I designate FNGD positions and roles such as chief of security for anyone, nor did I communicate directly or indirectly with LORENZO BAILEY while I was an a B.O.P. inmate. Since my sentence to prison, I have no knowledge of LORENZO BAILEY'S relationship with FNGD.

8. During my entire time in prison, I did not (a) write (or converse), (b) receive (or send) correspondence, or (c) meet with LORENZO BAILEY.

9. While I was in prison, neither a law enforcement officer, nor anyone else communicated with me about the trial before Judge Kuntz.

2

A-2

10. I understand that I am on supervised release and that making false statements could constitute a violation and result in my being returned to prison.

*Ronald Britton* (signature)
RONALD BRITTON

Sworn to before me this
18 day of April, 2023

_____ (signature)
NOTARY PUBLIC

KHALID IQBAL
Notary Public - State of New York
No. 01IQ6331996
Qualified in Queens County
My Commission Expires 10/26/2023

3

A-3

6/14/23, 5:28 PM  Eastern District of New York | Folk Nation Leader Charged in Connection with March 22, 2022 Shooting | United States Departme…

Case 1:20-cr-00293-WFK   Document 597   Filed 06/15/23   Page 12 of 14 PageID #: 8217

Welcome to the new look of justice.gov. In the coming months you'll see more pages in this new design. Please share your feedback with our webmaster.

 An official website of the United States government
Here's how you know

Menu

Search

**PRESS RELEASE**

# Folk Nation Leader Charged in Connection with March 22, 2022 Shooting

Tuesday, July 12, 2022

Share

**For Immediate Release**

U.S. Attorney's Office, Eastern District of New York

## Charge Part of a Joint Federal-State Effort to Dismantle the Gang in Brooklyn

An indictment was unsealed today in United States District Court for the Eastern District of New York charging Kwyme Waddell with being a felon in possession of ammunition. As alleged in court filings, the charge is related to a shooting Waddell committed in Brooklyn on March 22, 2022 in which the defendant shot into a crowd of people on the block of East 21st Street between Ditmas Avenue and Dorchester Road shortly after 9:30 p.m.

The defendant is one of the top leaders of the No Love City (NLC) subset of the Folk Nation Gangster Disciples, a violent street gang operating primarily in the area of Newkirk Avenue and Flatbush Avenue in Brooklyn.

6/14/23, 5:28 PM   Eastern District of New York | Folk Nation Leader Charged in Connection with March 22, 2022 Shooting | United States Departme…

Case 1:20-cr-00293-WFK   Document 597   Filed 06/15/23   Page 13 of 14 PageID #: 8218

Waddell was arrested this morning in Brooklyn and is scheduled to be arraigned this afternoon before United States Magistrate Judge Vera M. Scanlon at the federal courthouse in Brooklyn.

Breon Peace, United States Attorney for the Eastern District of New York, Michael J. Driscoll, Assistant Director-in-Charge, Federal Bureau of Investigation, New York Field Office (FBI), and Keechant L. Sewell, Commissioner, New York City Police Department (NYPD) announced the charge and arrest.

"As alleged, the defendant brazenly fired eleven shots into a crowd of people. Thankfully no one was harmed," stated United States Attorney Breon Peace. "This Office will continue to work tirelessly with all of our law enforcement partners to prosecute those who engage in gun violence, eliminate gangs from our streets and cut off the flow of guns that allow them to victimize our communities."

Mr. Peace expressed his appreciation to the FBI/NYPD Metro Safe Streets Task Force, the NYPD's Gun Violence Suppression Division, and the Kings County District Attorney's Office for their outstanding work and assistance in this investigation and prosecution.

"Today's indictment is another step forward in our ongoing work to rid New York City of violent gangs, illegal guns, and the havoc they cause in our community," said NYPD Commissioner Sewell. "Our focus remains on the people we serve, and we must ensure real consequences for anyone who puts New Yorkers at risk. To that end, I want to thank the U.S. Attorney's Office for the Eastern District of New York, the King's County District Attorney's Office, the FBI's New York Field Office, and all the investigators for their work on this case and for their steadfast commitment to public safety."

As alleged in the indictment and other court filings, the charge relates to a shooting committed in Brooklyn on March 22, 2022 in which the defendant shot into a crowd of people on the block of East 21st Street between Ditmas Avenue and Dorchester Road shortly after 9:30 p.m. As captured on surveillance video, Waddell drove to the location, fired at least eleven rounds at a crowd of people standing at the corner of Dorchester Road and East 21st Street, an area known as territory of NLC's gang rivals. Immediately following the shooting, Waddell bragged about the shooting to friends while pantomiming a gun with his hands, as captured on additional surveillance footage.

The indictment is part of a coordinated effort to dismantle the Brooklyn sets of Folk Nation Gangster Disciples and their leadership by federal and state authorities, including the United States Attorney's Office for the Eastern District of New York, the Kings County District Attorney's Office, the Joint FBI-NYPD Safe Streets Task Force, and the NYPD's Gun Violence Suppression Division. As part of the federal-state initiative, the United States Attorney's Office for the Eastern District of New York and the Kings County District Attorney's Office have brought numerous prosecutions against members and associates of Folk Nation Gangster

6/14/23, 5:28 PM    Eastern District of New York | Folk Nation Leader Charged in Connection with March 22 of 2022 Shooting | United States Departme…

Case 1:20-cr-00293-WFK   Document 597   Filed 06/15/23   Page 14 of 14 PageID #: 8219

Disciples, including <u>11 members and associates of the Folk Nation Gangster Disciples charged with multiple shootings and related firearms offenses in Brooklyn</u>.

The charge in the indictment is merely an allegation, and the defendant is presumed innocent unless and until proven guilty.

This case was brought as part of Project Safe Neighborhoods (PSN), a program bringing together all levels of law enforcement and the communities they serve to reduce violent crime and make our neighborhoods safer for everyone. As part of the program, U.S. Attorneys' Offices work in partnership with federal, state, local and tribal law enforcement and their local communities to develop effective, locally based strategies to reduce violent crime.

The government's case is being handled by the Office's Organized Crime and Gangs Section. Assistant United States Attorneys Sophia M. Suarez, Dana Rehnquist and Jonathan Siegel are in charge of the prosecution.

**The Defendant:**

KWYME WADDELL
Age: 30
Brooklyn, New York

E.D.N.Y. Docket No. 22-CR-305 (ENV)

**Contact**

John Marzulli
Danielle Blustein Hass
United States Attorney's Office
(718) 254-6323

Updated July 12, 2022

**Attachment**

Indictment  [PDF, 4 MB]

**Topics**

| PROJECT SAFE NEIGHBORHOODS | VIOLENT CRIME | FIREARMS OFFENSES |